UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NORRIS JONES, CORY JONES, and JOSHUWA JONES, <br><br>  Plaintiffs, <br><br> vs. <br><br> INDY 104, L.L.C. d/b/a THE RAM RESTAURANT AND BREWERY and RAM INTERNATIONAL 1, L.L.C. d/b/a THE RAM RESTAURANT AND BREWERY, <br><br>  Defendants. | 1:08-cv-01128-SEB-TAB |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

On January 21, 2007, Plaintiff Norris Jones and two of his sons, Plaintiffs Joshuwa and Cory Jones, all African-American adults, joined a group of friends at the Ram Restaurant and Brewery in downtown Indianapolis ("the Ram"), which is operated by Defendants Indy 104, L.L.C. d/b/a The Ram Restaurant and Brewery and Ram International I, L.L.C. d/b/a The Ram Restaurant and Brewery. Plaintiffs' plan was to enjoy food and drinks at the Ram and thereafter to attend the 2007 AFC Championship football game between the Indianapolis Colts and the New England Patriots (a game the Colts would win *en route* to a Super Bowl championship).

Plaintiffs and their friends were apparently not the only football fans with this plan; the wait for service at the Ram that day was consistently much longer than normal

and at one point was over two hours. Aff. of Crissen ¶ 4. The Joneses were fortunate to avoid this wait; when they arrived at the restaurant, their friends had already been seated and had ordered an appetizer and drinks. Dep. of N. Jones at 27, 29-30. All of these friends were Caucasian.

The sales tickets for Plaintiffs' table were opened at 12:28 p.m. and closed at 3:20 p.m. The waiter for Plaintiffs' table was Russell Bible, who, according to Norris Jones, treated Plaintiffs and their party in a friendly manner for most of their visit to the Ram. Dep. of N. Jones at 32, 33. While they were at the restaurant, numerous people at Plaintiffs' table, including Joshuwa Jones, played card games with cards they had brought with them to the restaurant. Dep. of N. Jones at 68; Dep. of C. Jones at 31. According to Cory Jones, Plaintiffs intended to stay at the Ram until the start of the football game. Dep. of C. Jones at 25.

In over two hours at the Ram, Plaintiffs had ordered only appetizers and drinks. Dep. of Geesman at 15, 25. When they finally attempted to order entrees, Bible told everyone at the table that they could not place any additional orders and suggested that they finish what they had already been served and leave to accommodate waiting guests. Id. at 14, 15.

According to the general manager of the Ram, it is standard practice at the restaurant for management to take steps to facilitate turnover of guests during especially busy periods, in order to prevent patrons from "camping out" at tables after finishing their meals. Aff. of Hornak ¶ 7. Pursuant to this custom, on the day of the 2007 AFC

Championship, Assistant Manager John Crissen encouraged guests to leave once they had finished, both by explicitly requesting that they leave promptly to accommodate waiting guests and by leaving checks at tables before guests had finished their meals. Id. at ¶ 4.

Crissen left checks at Plaintiffs' table after Bible had encouraged them to leave. At this point, the guests, including both the Joneses and their friends, asked why they were being kicked out. Crissen explained that he was not kicking them out but that, because of the long wait for seating by other patrons, management was trying to serve as many guests as possible before the start of the game. Aff. of Crissen ¶ 5. Crissen then apparently left Plaintiffs' table. Cory Jones followed him to the kitchen area of the Ram, where he confronted Crissen, saying "this is bullshit," as well as stating that his dad was a police officer and asking Crissen to explain himself further. Dep. of C. Jones at 37. The parties dispute whether Cory raised his voice at Crissen during this confrontation.

Crissen returned to the table and explained that the Ram was busy and that they had an established quota they had to make, so they were asking many guests to check out. Dep. of C. Jones at 38, 45. Norris asked Crissen "if he was doing this because [Plaintiffs] were black." Dep. of N. Jones at 58. According to Plaintiffs, "when [Norris] asked him that question he just looked at [Norris] and sort of smirked. He did not verbally respond, turned and walked away." Id.

Soon thereafter, Crissen returned to the table with Leon McGowen, an African-American executive chef at the Ram. At least one person at Plaintiffs' table made insulting remarks to McGowen at this time. Aff. of Crissen ¶ 9. McGowen explained to

3

the guests at Plaintiffs' table that he had no reason to believe that Crissen's actions were racially motivated, rather that they were aimed at trying to accommodate as many guests as possible at the Ram.  Aff. of McGowen ¶ 8.

This explanation was apparently unsatisfactory to the Joneses, who decided nonetheless to leave.  However, Norris called Ram General Manager Dave Hornak at his personal cell phone number (it is unclear whether they knew each other previously, or how otherwise he obtained this number) to complain that he was being kicked out of the restaurant.  Aff. of Hornak ¶ 4.  Hornak therefore called Crissen and told him that he should either escort the guests out or try to "win them over," if he thought that was feasible.  Aff. of Crissen ¶ 10.  As directed by Hornak, Crissen returned to Plaintiffs' table to explain that the manager had called to apologize for any misunderstanding.

When he arrived at the table, however, Plaintiffs had already left.  Aff. of Crissen ¶ 11.  Crissen had brought with him some complementary items (the parties dispute whether they were drinks or desserts), intending to offer them to placate the entire party, including Plaintiffs, as he did not know that Plaintiffs had left the restaurant.  Aff. of Crissen ¶ 13.  At least one of the other members of Plaintiffs' party recalled that Crissen apologized for the scene that had occurred moments before between Plaintiffs and restaurant personnel.  Dep. of Slaga at 19.

Believing that the treatment they received at the Ram that day was the result of racial discrimination, Plaintiffs filed the present lawsuit.  Before the Court are Defendants' Motion for Summary Judgment [Docket No. 50], as well as numerous

Motions to Strike [Docket Nos. 54, 60, & 62].

## *Legal Analysis*

*I.     Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears

the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.     *Motion for Summary Judgment*

Plaintiffs allege that Defendants discriminated against them on the basis of race, in violation of 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981.  The statute defines the making and enforcing of contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id.  Section 1981 claims are most often brought in connection with the right to contract for employment, but the statute also protects citizens' rights to enter into retail contracts.  Carney v. Caesars Riverboat Casino, LLC, 2009 WL 363623, at *3 (S.D. Ind. Feb. 11, 2009) (Hamilton, J.); Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756 (7th Cir. 2006).

Plaintiffs must satisfy three elements to establish a claim of discrimination under 42 U.S.C. § 1981: (1) that they are members of a racial minority; (2) that Defendants had the intent to discriminate against them on the basis of their race; and (3) that the discrimination concerned the making or enforcing of a contract.  Pourghoraishi, 89 F.3d at 756.  It is undisputed that Plaintiffs are members of a racial minority and that the conduct in this case concerned the making or enforcing of a contract.  The remaining issue and the only one we must address in ruling on the pending motion is whether Defendants' conduct was intentionally discriminatory.

A § 1981 "plaintiff can prove discrimination either by presenting evidence of

discrimination (the 'direct method' of proof)," or by the burden-shifting analysis established in McDonnell Douglas v. Green, 411 U.S. 792 (1973) (the "indirect method" of proof). Darchak v. City of Chicago Bd. of Educ., 580 F.3d 622, 631 (7th Cir. 2009); see also Dandy v. United Parcel Service, Inc., 388 F.3d 263, 272 (7th Cir. 2004).

Under the McDonnell Douglas framework, a plaintiff must begin by establishing a *prima facie* case of discrimination. Once that is established, the burden shifts to the defendant to articulate a nondiscriminatory reason for the actions it took against the plaintiff. If the defendant can offer a legitimate, nondiscriminatory reason for the decision, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the action is pretextual. See Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005).

A modified version of the McDonnell Douglas burden-shifting test has been adopted in the § 1981 context, under which the appropriate "parallel *prima facie*" case a plaintiff must make is as follows: "(1) the plaintiff is of a racial minority; (2) he attempted to make or enforce a contract; (3) the defendant denied him the right to make or enforce the contract; and (4) the defendant treated the plaintiff less favorably than other white people who were similarly situated." Carney, 2009 WL 363623, at *4 (quoting Williams v. Southern Illinois Riverboat/Casino Cruises, Inc., 2008 WL 1776461, at *6 (S.D. Ill. Apr. 16, 2008).

## II. **Prima Facie** *Case of Discrimination*

Plaintiffs may establish a *prima facie* case under either the direct method or the modified parallel method; if they cannot do so, they "cannot withstand summary judgment." Gilty v. Village of Oak Park, 919 F.2d 1247, 1250 (7th Cir. 1990).  In advancing their case here utilizing both methods, Plaintiffs refer to three main pieces of evidence to support their claim of different, or discriminatory, treatment: (1) Defendants' alleged statement that they would serve the remaining guests at Plaintiffs' table after Plaintiffs left the restaurant; (2) alleged comments made by a nameless white patron at the Ram, to the effect that he had not been asked to leave the restaurant; and (3) Defendants' attempt to make amends after Norris Jones called Ram General Manager Hornak.

As an initial matter, none of this evidence nor any other evidence before the Court constitutes direct evidence of discrimination.  Direct evidence of intentional discrimination does not rely upon inference or presumption.  Darchak, 580 F.3d at 631.  Thus, because nothing in the situation that occurred on January 21, 2007, at the Ram exhibited clear, direct racial bias on the part of Defendants, Plaintiffs cannot prove discrimination under the direct method.

Therefore, we assess their claims in detail solely under the parallel *prima facie* analysis for § 1981 claims.  As previously noted, because it is clear that Plaintiffs are of a racial minority and that they attempted to make or enforce a contract, only the third and fourth elements of that test are at issue here.  We assume *arguendo* that Defendants denied them the right to make or enforce the contract (and thus assume that the third

9

element is satisfied),[1] and focus on the central dispute between the parties, to wit, the fourth element: whether Defendants treated Plaintiffs less favorably than white patrons who were similarly situated. Carney, 2009 WL 363623, at *4.

Although Plaintiffs' three main allegations of discrimination, if supported by admissible evidence, could perhaps create disputes of material fact warranting the denial of Defendants' summary judgment motion, all of the evidence Plaintiffs offer to support these assertions is either inadmissible or unavailing. "Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009).

The first basis Plaintiffs offer to show that they were treated differently than white patrons is that, after they left the restaurant, the manager allegedly told the remaining members of Plaintiffs' party that he would serve them "now that those guys are gone," presumably referring to Plaintiffs. Plaintiffs have adduced affidavits from the other members of their party attesting to this statement. However, all of the witnesses who submitted such affidavits have testified under oath at their depositions that they did not hear anyone make any such statement. E.g., Dep. of C. Dale at 23; Dep. of B. Dale at 22-

---

[1] We note, however, that Plaintiffs likely cannot establish the third element of their *prima facie* case, *i.e.*, that Defendants denied Plaintiffs the right to make or enforce the contract. Norris admitted that Plaintiffs were treated in a friendly manner by the hostess and waiter. Plaintiffs and their friends were given menus, and they ate and drank for almost three hours. Until the time Defendants encouraged the party to make the table available to other customers, no one at Plaintiffs' table complained about the service or treatment they had received.

23; Dep. of Pickering at 20.[2]

Affidavits offered to contradict deposition testimony are not entitled to any weight at the summary judgment phase:

> Although at the summary judgment stages we must interpret the evidence in the light most favorable to [the non-movant], Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989), that does not allow her to contradict deposition testimony with later-filed contradictory affidavits. As we explained [previously], we have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating "sham" issues of faact with affidavits that contradict their prior depositions . . . .

Ineichen v. Ameritech, 410 F.3d 956, 963 (7th Cir. 2005) (citation omitted).

"Affidavits, though signed under oath by the affiant, are typically . . . written by the affiant's lawyer, and when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." Beckel v. Wal-Mart Associates, Inc., 301 F.3d 621, 623 (7th Cir. 2002). Plaintiffs offer no plausible

---

[2] Plaintiffs have filed a Motion to Strike [Docket No. 54], seeking the exclusion of five depositions taken by Defendants, including the depositions of the other members of Plaintiffs' party, on the ground that the deponents received insufficient notice and opposing counsel was not notified prior to the depositions. This motion misrepresents the facts. Indeed, it is clear both that the deponents were notified in a timely fashion (any delays that may have occurred were clearly the result of Plaintiffs' counsel's dilatory behavior) and that Defendants undertook significant efforts to notify opposing counsel far in advance of the depositions. Plaintiffs' motion also requests that certain portions of Plaintiffs' Answers to Interrogatories be redacted; the Court has previously ruled on this matter, and Defendants complied with the order to redact the information. Accordingly, Plaintiffs' Motion to Strike shall be denied. Further, because that motion is denied, Defendants' Motion in Opposition of Plaintiffs' Motion to Strike [Docket No. 62], which does no more than oppose Plaintiffs' Motion to Strike, is moot and shall also be denied as such, though the arguments contained in the brief accompanying that motion have been taken into consideration here.

explanation for the discrepancies contained in the affidavits upon which they rely. Accordingly, Plaintiffs' proffered evidence is inadmissible, and the remaining evidence of record demonstrates that they were not treated differently than white customers in this regard.[3]

Second, Plaintiffs offer their own deposition testimony regarding the alleged statement of another Ram patron, who purportedly told them that no other tables (all of which had white guests, according to the record) had been asked to leave. Aff. of N. Jones ¶ 10. This statement is undeniably inadmissible hearsay, given that it is offered for the truth of the matter asserted, and thus it cannot be relied upon at trial or summary judgment. Gunville, 583 F.3d at 985.[4] Furthermore, other evidence in the record establishes that Crissen undertook significant efforts to encourage many guests at other tables at the restaurant that day to finish up and make tables available as soon as possible. Aff. of Crissen ¶ 5; Aff. of Willis ¶ 6; Aff. of Hornak ¶ 7. Therefore, the admissible evidence in the record demonstrates that Plaintiffs were treated in a similar fashion to other, white patrons of the restaurant that day, and thus this alleged fact cannot support their claim of discrimination.

Finally, Plaintiffs attempt to paint Defendants' efforts to remedy the situation after

---

[3]Defendants have interposed a Motion to Strike [Docket No. 61], seeking the exclusion of these affidavits, as well as other evidence, discussed below. Because Plaintiffs' proffered evidence is inadmissible, this Motion shall be granted.

[4]Once again, Defendants' Motion to Strike seeks the elimination of this evidence, and, as we do not consider the evidence in any regard, the motion is granted.

Plaintiffs' departure as malicious. Defendants admit that, after Plaintiffs' departure from the restaurant, Crissen gave the remaining guests at the table either free drinks or free dessert. Plaintiffs suggest that the sentiment underlying this action was one marked by racial bias, but they present no evidence beyond speculation to support that characterization of Crissen's behavior. Indeed, the evidence demonstrates that when Crissen arrived back at the table with additional complementary food and beverages, he was unaware that Plaintiffs had left, and that in doing so he was simply following Hornak's suggestion by attempting to make amends with everyone at the table. It would require a significantly strained interpretation of the facts before the Court to cast this as racially motivated conduct.

Accordingly, there is no admissible or otherwise convincing evidence to establish that Defendants treated Plaintiffs less favorably than similarly situated white patrons.[5] Plaintiffs thus cannot establish the final element of their *prima facie* case under the parallel method, which is "fatal to the claim under § 1981 using the indirect method of proof." Carney, 2009 WL 363623, at *4 (citing Hong v. Children's Memorial Hospital,

---

[5]Plaintiffs analogize this case to McCaleb v. Pizza Hut of America, Inc., 28 F.Supp.2d 1043 (N.D. Ill. 1998). In McCaleb, an African-American family sued Pizza Hut for violations of § 1981 because the employees of a Pizza Hut restaurant failed to give them plates, utensils, or napkins which had been provided to white customers; refused to provide them with drinks; vacuumed around their feet while they were eating; and repeatedly directed racial slurs at the family. Id. at 1046. Plaintiffs' experience was simply not factually analogous to that of the plaintiffs in McCaleb, nor any other case in which customers have successfully alleged a § 1981 violation. See, e.g., Hill v. Shell Oil Co., 78 F.Supp.2d 764, 777 (N.D. Ill. 1999); Robertson v. Burger King, Inc., 848 F.Supp. 78 (E.D. La. 1994); Jackson v. Tyler's Dad's Place, Inc., 850 F.Supp. 53 (D.D.C. 1994).

993 F.2d 1257, 1261 (7th Cir. 1993)).

### III.    *Legitimate, Non-Discriminatory Reason*

Were Plaintiffs able to establish a *prima facie* case of discrimination, Defendants would be required to proffer a legitimate reason for the treatment afforded Plaintiffs at the Ram.  Darchak, 580 F.3d at 631.  Defendants have adduced copious admissible evidence demonstrating that they asked Plaintiffs, and many other guests at the restaurant that day, to leave so as to accommodate other guests who had been awaiting tables for a significant amount of time.  According to Hornak, the General Manager at the Ram, this was standard practice at the restaurant.  Plaintiffs have not denied that the Ram was busy, and they have admitted that they were permitted to stay at their table for almost three hours, during which time they had not ordered full meals.  Based on the crowd accumulating at the entrance to the restaurant and the amount of time already afforded Plaintiffs' party to remain at the table and be served drinks and hors d'oeuvres, Assistant Manager Crissen made a business decision to encourage Plaintiffs, like many other guests who also had long been seated at the restaurant, to finish up and leave to make room for others.  This was clearly a legitimate, nondiscriminatory reason for the treatment received by Plaintiffs at the hand of Defendants.

Moreover, we hold that this proffered reason clearly does not constitute a pretext for discrimination.  Citing the inadmissible evidence discussed previously, Plaintiffs attempt to paint Crissen's avowed decision to encourage customer turnover as phony.  In

determining whether the decision was pretextual, the Court does not assess whether that decision was correct, but whether Plaintiffs have presented enough evidence to show that the articulated reason was a lie.  Williams v. Southern Illinois Riverboat/Casino Cruises, Inc. 2008 WL 1776461 (S.D. Ill Apr. 16, 2008); see also Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000).  The evidence before the Court makes clear that the Ram has a regular practice of asking guests to free up tables on busy days, and that Ram management made such a request of many patrons at other tables on January 21, 2007, the day in question.  Thus, there is no reason to believe that Defendants are lying in asserting that this was the reason they asked Plaintiffs' party to leave.  Accordingly, Plaintiffs have been unable to show that Defendants' legitimate, nondiscriminatory reason for asking them to leave was pretext for discriminatory treatment.

For all of the foregoing reasons, Plaintiffs cannot succeed on their claim that Defendants violated § 1981, and summary judgment is appropriate.

## IV.   *Conclusion*

For the reasons detailed in this entry, Defendants' Motion for Summary Judgment [Docket No. 50] is <u>GRANTED</u>; Plaintiffs' Motion to Strike [Docket No. 54] is <u>DENIED</u>; Defendants' Motion to Strike [Docket No. 60] is <u>GRANTED</u>; and Defendants' Motion in Opposition to Plaintiffs' Motion to Strike [Docket No. 62] is <u>DENIED</u>.  Final judgment shall be entered in accordance with this opinion.

IT IS SO ORDERED.

Date: __06/02/2010_____

Copies to:

Peter H. Rosenthal
LAW OFFICE OF PETER H. ROSENTHAL
atyrosenthal@aol.com

Alexis A. Sumner
BENESCH, FRIEDLANDER,COPLAN & ARONOFF, LLP
asumner@beneschlaw.com

Mark R. Waterfill
BENESCH, FRIEDLANDER, COPLAN, & ARONOFF, LLP
mwaterfill@beneschlaw.com

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana